**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **WILLIAM EDWARD CURRY, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-429 c/w 25-2089, 25-2090, 25-2091** |
| **CHEMTRANS TAURUS M/V, ET AL.** | **SECTION: D(3)** |

## ORDER

Before the Court is a Motion to Demand Countersecurity Pursuant to Admiralty Rule E(7), filed by Counterclaimants M/V CHEMTRANS TAURUS, its engines, machinery, tackles, appurtenances, apparel, etc., *in rem*, and Sparrow 6 Shipping, Inc. ("Counterclaimants" or "Movants").[1] Counterdefendants William Curry, Billy Curry, and the F/V BRINLEY MARIE ("Counterdefendants" or "Plaintiffs"), oppose the Motion.[2] Counterclaimants filed a Reply.[3] After careful condition of the record, the parties' memoranda and the applicable law, the Court denies the Motion.

## I. FACTUAL & PROCEDURAL BACKGROUND

This action arises from vessel collision involving the M/V CHEMTRANS TAURUS and the F/V BRINLEY MARIE, owned by Plaintiff William Curry, captained by Plaintiff Billy Curry, and crewed by Cameron Hobby, Stephen Simonds, and Jackson Morgan.[4] The F/V BRINLEY MARIE is a 63 foot fishing vessel, and the M/V CHEMTRANS TAURUS is a 227 meter/745 foot long, foreign-flagged oil tanker.

---

[1] R. Doc. 45.
[2] R. Doc. 54.
[3] R. Doc. 58.
[4] R. Doc. 1 at ¶¶ 9-10.

Plaintiff William Curry initiated this action asserting claims for damages to the F/V BRINLEY MARIE as well as a personal injury claim.[5] In response, Counterclaimants furnished security in the amount of $2,000,000 via letter of undertaking.[6] Counterclaimants filed a counterclaim seeking (1) damages sustained by the M/V CHEMTRANS TAURUS and related expenses and costs arising from the same maritime casualty;[7] and (2) a right of contribution against Plaintiffs.[8]

Counterclaimants now move for countersecurity from Plaintiffs.[9] Counterclaimants contend that Plaintiffs are obligated under Rule E(7) to provide countersecurity, and the burden rests on Plaintiffs to show why they should be excused from providing same.[10] Counterclaimants maintain that Rule E(7) applies because the counterclaim arises from the same transaction or occurrence and the counterclaim is not frivolous.[11] Further, Counterclaimants argue that equity and the purpose of Rule E(7) mandate countersecurity "to place the parties on equal footing regarding security"[12] as Counterclaimants have posted $2,000,000 in security for Plaintiffs' benefit.[13] Counterclaimants contend that the amount of security requested,

[5] *Id.* at ¶¶ 12-17.
[6] R. Doc. 45-1 at p. 2.
[7] R. Doc. 43 at ¶ 6.
[8] *Id.* at ¶ 12.
[9] R. Doc. 45-1.
[10] *Id.* at p. 3
[11] *Id.* at pp. 3-4. Movants argue the counterclaim is "indisputably bona fide" since the M/V CHEMTRANS TAURUS sustained "actual, quantifiable damage in the maritime casualty." *Id.* at 4. Further, Counterclaimants contend that they have also incurred damages for loss of use and related expenses. *Id.*
[12] *Id.*
[13] *Id.*

$300,000.00, is reasonable, and proceedings should be stayed pending posting of the security.[14]

In Response, Plaintiffs argue that good cause to deny the request exists. Plaintiffs' primary argument is that they "do not have the financial resources to post any security in this case."[15] Plaintiffs contend that a requirement to post security would require the Plaintiffs to give up their initial claim because they do not have the financial resources to post any security.[16] Plaintiffs further argue that there is not an equivalent need for security because the F/V BRINLEY MARIE has been immobilized since the collision, it is physically located within the district, and Plaintiffs and their vessel are Louisiana residents, whose property is located within this district.[17] Finally, Plaintiffs contend that the M/V CHEMTRANS TAURUS suffered no appreciable damage in the collision, and the estimated cost of any post-collision repairs needed to the CHEMTRANS TAURUS was zero.[18]

In Reply, Counterclaimants assert that the mandatory nature of Rule E(7) requires the posting of countersecurity, and that "Plaintiffs' arguments do not overcome the presumptive requirement of Rule E(7), particularly in light of the fundamental inequity of the current situation and the substantial exposure Counterclaimants face without reciprocal security."[19] Counterclaimants argue that

---

[14] *Id.* at pp. 4-5.
[15] R. Doc. 54.
[16] *Id.* at p. 1.
[17] *Id.* at pp. 1, 4.
[18] *Id.* at p. 1 (citing R. Doc. 54-1 at p. 14).
[19] R. Doc. 58 at p. 1.

financial ability to post countersecurity is merely one factor and is not dispositive.[20] Counterclaimants further contend that they face substantial exposure due to the personal injury claims asserted by the crew members of the F/V BRINLEY MARIE under the principles of maritime law and joint and several liability.[21] Finally, Counterclaimants contest Plaintiffs' arguments that M/V CHEMTRANS TAURUS suffered no appreciable damage as that argument fails to recognize damage for "loss of use, investigation costs, survey costs, and other related expenses incurred as a result of the collision."[22] Counterclaimants contend that the Plaintiffs' claims need not be dismissed, only stayed.[23] Alternatively, Counterclaimants request the Court order the Plaintiffs to void and return the $2,000,000 letter of undertaking provided to Plaintiffs.[24]

## II. LEGAL STANDARD

Counterclaimants' request is governed by the Supplemental Admiralty and Maritime Claims Rule E(7)(a), which provides:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit such security has been given must give security for damages demanded in the counterclaim unless the court, for cause shown, directs otherwise. Proceedings on the original claim must be stayed until this security is given, unless the court directs otherwise.

---

[20] *Id.* at p. 2 (quoting *Titan Navigation, Inc. v. Timsco, Inc.*, 808 F.2d 400, 403-04 (5th Cir.1987) ("We have recognized the pertinency of this consideration by concluding that financial difficulties would not automatically excuse the countersecurity requirement.")).
[21] *Id.* at pp. 4-5.
[22] *Id.* at p. 4.
[23] *Id.* at p. 6.
[24] *Id.* at p. 8

The purpose of this rule is "to place the parties on an equality as regards security."[25] "Although the language of the rule is automatic, it is not absolute; the original seizing complainant may be excused by the court 'for cause shown.'"[26] The determination of "for cause shown" is at the discretion of the trial court,[27] but the Fifth Circuit Court of Appeals has provided guidance as to what may constitute "cause." Factors to consider include whether the countersecurity is in an amount so great that the original plaintiff is forced to give up his initial claim, whether a party is financially unable to post countersecurity, and whether the counterclaim is frivolous or lacking in merit.[28] The Fifth Circuit has further held that another consideration is "the potential injustice of requiring [one party] to post security without affording reciprocal protection."[29] "The exercise of the trial court's discretion to order countersecurity is to be guided by the essential and equitable purposes of the rule."[30]

## III. ANALYSIS

First, the Court finds that Plaintiffs have demonstrated that they are financially unable to post countersecurity. Plaintiffs William and Billy Curry testified in their depositions to their loss of income and current financial positions.[31]

---

[25] *World Marine Transp. & Salvage, Inc. v. Lykes Bros. S.S. Co.*, No. CIV. A. 93-1218, 1995 WL 529833, at *1 (E.D. La. Sep. 7, 1995) (quoting *Washington–Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.*, 263 U.S. 629, 638-39 (1924) (construing former Admiralty Rule 53)).
[26] *Id.* (quoting *Titan Navigation, Inc.*, 808 F.2d at 403).
[27] *Id.*
[28] *Id.* (citing *Titan Navigation, Inc.*, 808 F.2d at 403-05; *The City of Beaumont*, 8 F.2d 599, 601 (4th Cir. 1925) (internal citations omitted)).
[29] *Titan Navigation, Inc.*, 808 F.2d at 404.
[30] *Id.*
[31] R. Doc. 54 at p. 2. William Curry testified that he has been unable to work as a commercial fisherman since the collision and is earning approximately $240 per week in his power washing business. R. Doc. 54-3 at pp. 46-50, 185-86. William was also evicted from him home last year. *Id.* at pp. 179-181. Billy

Requiring Plaintiffs post countersecurity would deprive Plaintiffs of their right to prosecute their initial claim, and essentially demand the indefinite stay or dismissal of Plaintiffs' case. The Court acknowledges that the purpose Rule E(7) is "to be guided by the essential and equitable purposes of the rule,"[32] but finds that requiring security from the Plaintiffs would be inequitable.

Second, there is not a parallel security concern between the Plaintiffs and Counterclaimants. The purpose of vessel seizures and required security is to allow courts to continue to exercise jurisdiction over parties who are "mobile and able to flee the jurisdiction of the court."[33] The Plaintiffs and their vessel, the BRINLEY MARIE, are Louisiana residents, and their property is located within the district.[34] The BRINLEY MARIE is presently located on land in Slidell, Louisiana.[35] There is not a reciprocal concern that Plaintiffs and their vessel will flee the jurisdiction of this Court.

Having considered the factors outlined by the Fifth Circuit in *Titan Navigation* holistically,[36] the Court finds that good cause exists to deny ordering countersecurity in this matter. While the Court appreciates—and agrees with—Counterclaimants' argument that lack of financial ability does not automatically excuse a claimant from

Curry testified that he earns on average $200-$300 a week in his current role working on a crabbing boat. R. Doc. 54-4 at pp. 26-30.

[32] *Titan Navigation, Inc.*, 808 F.2d at 404.

[33] *Golden of Louisiana v. Coutinho Caro & Co.*, No. CIV.A 98-2883, 1999 WL 135296, at *2 (E.D. La. Mar. 11, 1999).

[34] R. Doc. 54 at p. 5.

[35] *Id.* at p. 2.

[36] The Court notes that while the Plaintiffs seemingly assert that the counterclaim is frivolous, *see id.* at 4-5, it is not necessary for the Court to consider that factor at this time. The merit of the counterclaim is factual in nature, and is better suited for determination at trial. The Court finds that there are significant other factors that merit denial of the request for countersecurity.

posting security, the Court recognizes that requiring security under these particular facts serves little purpose other than to halt litigation.[37] This matter is set for trial in approximately one month.[38] Staying the proceedings at this point is not in the interests of justice.[39] While Counterclaimants' correctly assert that the purpose of Rule E(7) is to prevent injustice by requiring one party to post security while the other party does not, the Fifth Circuit has also counseled the trial court "that the circumstances of each case must government the propriety of the ordering of countersecurity."[40] The circumstances of this case do not warrant countersecurity at this juncture.

The Court now turns to Counterclaimants' alternative request, an Order for Plaintiffs to "void and return the $2,000,000 letter of undertaking provided to Plaintiffs."[41] The Court discussed this request with all parties at the Pretrial Conference held on October 28, 2026 in order to allow Plaintiffs to respond to the Counterclaimants' alternative request. After hearing from all parties, the Court does not feel it is appropriate to grant Counterclaimant's alternative request. As noted above, there are not parallel security concerns between the Plaintiffs and Counterclaimants. The purpose of vessel seizures and required security is to allow courts to continue to exercise jurisdiction over parties who are "mobile and able to

---

[37] *U.S. Mar. Servs., Inc. v. Trade Ventures, Inc.*, No. CIV. A. 98-0499, 1998 WL 388669, at *2 (E.D. La. July 8, 1998).
[38] And the Court has every intention of proceeding to trial on that date.
[39] *See* R. Doc. 33. Fed. R. Civ. P. 1.
[40] *Titan Navigation, Inc.*, 808 F.2d at 405.
[41] R. Doc. 45 at p. 8.

flee the jurisdiction of the court." [42] Counterclaimants' vessel is mobile and able to flee the jurisdiction of the Court. The reasons for the Court's Order Authorizing the Issuance of Writ of Attachment have not changed.[43]

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Demand Countersecurity Pursuant to Admiralty Rule E(7)[44] is **DENIED.**

New Orleans, Louisiana, October 30, 2026.

**WENDY B. VITTER**
**United States District Judge**

[42] *Golden of Louisiana v. Coutinho Caro & Co.*, No. CIV.A 98-2883, 1999 WL 135296, at *2 (E.D. La. Mar. 11, 1999).
[43] R. Doc. 5.
[44] R. Doc. 45.